# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **EDEN ENVIRONMENTAL CITIZEN'S GROUP LLC,**<br><br>Plaintiff,<br><br>vs.<br><br>**LAPTALO ENTERPRISES, INC., ET AL.,**<br><br>Defendants**.** | CASE NO. 18-cv-05544-YGR<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 39 |

Plaintiff Eden Environmental Citizen's Group, LLC, ("Eden") brings this citizen suit against Defendants Laptalo Enterprises, Inc., dba JL Precision ("Laptalo Enterprises"), Jakov Laptalo, Michael Laptalo, Carl Italiano, and Does 1-10 pursuant to the Federal Water Pollution Control Act, also known as the Clean Water Act ("CWA"), 33 U.S.C. Sections 1251, *et. seq.*, for: (1) failure to develop and implement an adequate monitoring and reporting program (Count 1); (2) failure to submit timely annual reports to the regional water board (Count 2); (3) failure to implement the best available and best conventional treatment technologies (Count 3); and (4) discharges of contaminated storm water in violation of permit conditions and the CWA (Count 4). Plaintiffs allege that defendants improperly stored and disposed of industrial waste at Laptalo Enterprises' sheet metal manufacturing facility.

Now before the Court is the defendants' second motion to dismiss.[1] (Dkt. No. 39 ("MTD").) Having carefully considered the pleadings and the papers submitted, and for the reasons set forth more fully below, the Court hereby **DENIES** defendants' motion to dismiss.

---

[1] The Court has reviewed the papers submitted by the parties in connection with defendants' motion to dismiss. The Court has determined that the motion is appropriate for decision without oral argument, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78. *See also Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991). Accordingly, the Court **VACATES** the hearing scheduled for March 19, 2019.

**I. BACKGROUND**

On September 10, 2018, Eden filed its initial complaint, a citizens' suit against defendants pursuant to the CWA. (Dkt. No. 1 ("Compl.").) Defendants filed a motion to dismiss on January 9, 2019 (Dkt. No. 29), which the Court denied as moot following plaintiff's filing of its first amended complaint (Dkt. No. 30 ("FAC")) on January 16, 2019. (Dkt. No. 35.) Defendants subsequently filed the instant motion to dismiss arguing that plaintiff failed to plead sufficiently specific facts to satisfy the requirements for Article III standing.[2] (MTD at 3.)

In their FAC, Eden alleges that defendants use their property at 2360 Zanker Road, in San Jose, California (the "Facility") to manufacture precision sheet metal and machining custom framing.[3] (FAC ¶ 69.) Plaintiff further alleges that "Laptalo Enterprises stores large quantities of industrial materials outdoors at the Facility that can be exposed to storm water, eroded by wind, and otherwise contaminate the surrounding watershed." (*Id.* ¶ 67.) According to Eden, the resulting polluted storm water discharge drains directly into Coyote Creek which flows into the San Francisco Bay. (*Id.* ¶ 68.) In its opposition, Eden includes the additional allegation that the

---

[2] In connection with their motion to dismiss, defendants request that the Court take judicial notice of two documents: (1) Eden's Statement of Information (Limited Liability Company) Form LLC-12 filed with the California Secretary of State, dated June 6, 2018; and (2) Eden's Registration – Articles of Organization filed with the California Secretary of State, dated June 1, 2018. (Dkt. No. 40.) These business records have been filed with the California Secretary of State and are, therefore, matters of public record. Accordingly, the Court **GRANTS** defendants' unopposed request. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (noting "a court may take judicial notice of matters of public record" and documents whose "authenticity . . . is not contested" and upon which a plaintiff's complaint relies) (internal quotation marks omitted) (alterations in original).

Additionally, the Court notes that although defendants characterize their motion as one brought pursuant to Federal Rules of Civil Procedure 12(b)(1) *and* 12(b)(6), in the Ninth Circuit "[t]hough lack of *statutory* standing requires dismissal for failure to state a claim, lack of *Article III* standing requires dismissal for lack of subject matter jurisdiction." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (emphasis in original). Accordingly, the Court addresses the motion under the rubric of Rule 12(b)(1) only.

[3] The Court notes that although plaintiff's initial complaint alleged CWA violations at this Facility as well as a property located at 1325 El Pinal Drive in Stockton, California, the FAC limits plaintiff's allegations to defendants' conduct at the Facility in San Jose. (*Compare* Compl. ¶¶ 69-76 *with* FAC ¶¶ 66-72; *see also* Dkt. No. 43 at 4 (noting that Eden filed the FAC in order to "remove the Stockton facility").)

2

Facility is located near the Guadalupe River, in addition to Coyote Creek, both of which flow into the San Francisco Bay. (*See* Dkt. No. 43 ("Opp.") at 3.)

With respect to standing, Eden avers in its FAC that its members "reside and work near the San Francisco Bay and its tributaries, and use those waters and their watersheds for recreation, sports, fishing, swimming, hiking, photography, nature walks, and scientific study." (FAC ¶ 7.) Along with its opposition to defendants' instant motion, Eden submits four declarations in support of its claim of standing.[4] (*See* Opp. at 5-6.) Of these declarations, two were submitted by individuals who purport to be members of Eden, namely Aiden J. Sanchez and Theophilus Austin Mills III. (*See* Dkt. Nos. 43-14 ("Sanchez Decl.") ¶ 2; 43-15 ("Mills Decl.") ¶¶ 2-3.)

Relevant to the instant motion, in his declaration, Sanchez avers that he founded Eden due to his concern about pollution in the San Francisco Bay "coming from industrial businesses" such as Laptalo Enterprises and how it affects himself, other San Francisco Bay area surfers, and his local community. (Sanchez Decl. ¶¶ 2, 3.) With respect to Eden's members, Sanchez declares that the group has members throughout northern California, including declarant Mills, "who share a common goal of wanting to keep northern California's creeks, rivers, lakes and bays clean so that they can recreate, swim, fish[,] and otherwise enjoy those waters without having to fear adverse effects from industrial pollution." (*Id.* ¶ 3.)

In the second declaration, Mills asserts that he grew up in the San Jose area near Guadalupe River and has lived and worked in the San Francisco Bay area for over thirty years. (Mills Decl. ¶ 4.) He further avers that he holds a commercial fishing license and that his

---

[4] In connection with its opposition to defendants' motion to dismiss, plaintiff requests that the Court take judicial notice of twelve documents. (*See* Dkt. No. 43-1 ¶¶ 6-17.) Six of these documents purport to be letters from the San Francisco Bay Regional Water Quality Control Board ("Water Board") to Laptalo Enterprises. (*See* Dkt. Nos. 43-2 – 43-7.) The seventh and eighth documents purport to be an Acceptance of Conditional Resolution and Waiver of Right to Hearing filed with the Water Board and a letter from Laptalo Enterprises to the Water Board, respectively. (*See* Dkt. Nos. 43-8, 43-9.) The four remaining documents purport to be Water Board annual reports. (*See* Dkt. Nos. 43-10 – 43-13.) Because the Court does not rely on these documents or the facts contained therein to determine whether plaintiff has standing in the instant action and defendants appear to contest the facts contained therein (*see* Dkt. No. 45), the Court **DENIES** plaintiff's request.

"hobbies include bird watching, wildlife observation, geology, fishing, horticulture, photography, hiking, gardening and landscaping, boating and canoeing, white water rafting, snorkeling, scuba diving[,] and water skiing." (*Id.* ¶¶ 5, 7.) Mills declares that defendants' alleged conduct has negatively impacted these activities by degrading the beauty and quality of the Guadalupe River, contributing to heavy metals toxicity in the river that harm aviary and aquatic life, and threatening "the public health of the many Santa Clara county residents and visitors, including homeless people, who use the Guadalupe River, the Guadalupe River trail[,] and the Ulistac Natural Area."[5] (*Id.* ¶ 18.) With respect to himself, Mills expresses his concern that, in light of his extensive use of the affected areas, he has suffered exposure to unknown amounts of heavy metals emanating from the Facility and into the Guadalupe River and that this exposure will result in future health problems that could have been prevented had defendants complied with state and federal environmental regulations, including the CWA. (*Id.* ¶ 19.)

Mills explains that once he learned of defendants' environmental violations and the short distance from the Facility to the Guadalupe River, he ceased using the Guadalupe River Trail and visiting the Ulistac Natural Area and that he is "experiencing both harm and outrage" due to defendants' refusal to comply with state and federal regulations and is "deeply saddened by the loss of the use of the beautiful Ulistac Natural Area and the Guadalupe River Trail." (*Id.* ¶¶ 20-21.) Mills alleges that he is currently a member of Eden and that he joined the organization "to help protect the environment[,]" including the "rivers, streams, lakes[,] and bays of northern California[.]" (*Id.* ¶¶ 1, 2.)

---

[5] Mills points to a recent classification of steelhead trout in the Guadalupe River as endangered as well as his own observations that the river "has become dirty and cloudy with grease and floating and suspended materials[,] . . . is discolored and turbid[,] and has a foul odor" as evidence of this negative impact. (Mills Decl. ¶ 16.) Mills also notes that the California Office of Environmental Health Hazard Assessment recently issued an official advisory stating that no one should eat any fish caught from the Guadalupe River due to high levels of heavy metals found therein. (*Id.* ¶ 17.)

## II. LEGAL STANDARD

### A. Rule 12(b)(1) Standard

A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Federal courts are of "limited jurisdiction" and plaintiff bears the burden to prove the requisite federal subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Of Am.*, 511 U.S. 375, 377 (1994). The Court may consider evidence outside the complaint to resolve factual disputes in the process of determining the existence of subject matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Courts consequently need not presume the truthfulness of a plaintiff's allegations in such instances. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

### B. Article III Standing

"An organization has standing to bring suit on behalf of its members when: '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 (9th Cir. 2000) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). "Individual members would have standing in their own right under Article III if 'they have suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical, . . . the injury is fairly traceable to the challenged action of the defendant; and . . . it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000)). Additionally, a plaintiff must have standing at the outset of the litigation. *See Laidlaw*, 528 U.S. at 181.

The Supreme Court requires that plaintiff-organizations "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). Such an organization must show that at least one of

5

its members has "standing to sue in [his] own right." *Pac. Lumber Co.*, 230 F.3d at 1147 (alternation in original). "The 'injury in fact' requirement in environmental cases is satisfied if an individual adequately shows that she has an aesthetic or recreational interest in a particular place, or animal, or plant species and that that interest is impaired by a defendant's conduct." *Id*.

Moreover, the CWA "does not permit citizens suits for wholly past violations." *Russian River Watershed Prot. Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1143 (9th Cir. 1998) (citing *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found.,* 484 U.S. 49 (1987)). Therefore, to have standing under the CWA, a plaintiff must allege the existence of ongoing violations or the reasonable likelihood of continuing future violations. *See id.*

### III. ANALYSIS

"The CWA's citizen suit provision extends standing to the outer boundaries set by the 'case or controversy' requirement of Article III of the Constitution." *Pac. Lumber Co.*, 230 F.3d at 1147. With respect to standing, plaintiff's FAC states only that Eden's members "reside and work near the San Francisco Bay and its tributaries, and use those waters and their watersheds for recreation, sports, fishing, swimming, hiking, photography, nature walks and scientific study" and that "[t]heir use and enjoyment of these natural resources are specifically impaired by defendant's violations of the CWA." (FAC ¶ 7.) This allegation fails to establish Article III standing for plaintiff-organization Eden because it does not identify even one member of the organization nor make specific claims regarding past or future harm suffered by that individual. *See Pac. Lumber Co.*, 230 F.3d at 1147; *Summers*, 555 U.S. at 498.

Looking beyond the FAC, as permitted by *McCarthy*, Mills' declaration asserts that defendants' conduct has impaired, and continues to impair, his aesthetic and recreational interests in the Guadalupe River and the surrounding area, as well as the animal life found therein.[6] *See* Mills Decl. ¶¶ 5, 7 18-21; *see also Pac. Lumber Co.*, 230 F.3d at 1147; *McCarthy*, 850 F.2d at

---

[6] The Court notes that because Sanchez's declaration does not include allegations of injury or harm beyond his "concern[] about pollution in the San Francisco Bay coming from industrial businesses such as" Laptalo Enterprises and does not provide any additional information about Mills' membership in Eden, it does not have any bearing on the standing analysis. (*See* Sanchez Decl. ¶¶ 2, 3.)

6

560. Specifically, Mills avers that before he knew of defendants' alleged conduct, he regularly engaged in recreational activities, including fishing, cycling, hiking, and wildlife observation, in the Guadalupe River, the Guadalupe River trail, and the Ulistac Natural area and that he has since ceased his engagement for fear of additional exposure to the heavy metals allegedly emanating from the Facility. (Mills Decl. ¶¶ 5, 7, 8, 11, 18-21.) Although Mills does not clarify when he engaged in recreational activities that may have exposed him to heavy metals as a result of defendants' alleged conduct, or when he first learned of defendants' alleged conduct and therefore ceased his prior activities, he does declare himself a *current* member of Eden and alleges that he is "currently . . . experiencing . . . harm" as a result of defendants' alleged conduct. (*Id.* ¶¶ 1, 21.) Thus, although not alleged in the FAC, Eden has provided supplemental information indicating that one of its current members has suffered, and continues to suffer, a concrete injury traceable to defendants' alleged activity at the Facility and therefore has standing in his own right under Article III. *See Pac. Lumber Co.*, 230 F.3d at 1147.

Moreover, the interests that this suit seeks to protect are germane to the organization's purposes, namely "to protect, enhance, and assist in the restoration of rivers, creeks, streams, wetlands, vernal pools, and their tributaries located in California[,]" (FAC ¶ 7) and neither Eden's claim of violation of the CWA nor the declaratory, injunctive, and civil penalty relief sought requires individualized proof and are thus properly resolved in a group context. *See* FAC ¶¶ 91-113, at 22-23; *see also Pac. Lumber Co.*, 230 F.3d at 1147; *Associated General Contractors of California, Inc. v. Coalition for Economic Equality*, 950 F.2d 1401, 1408 (9th Cir. 1991) (citing *Hunt*, 432 U.S. at 344).

Notwithstanding the foregoing, Eden has failed to allege, either in the FAC or the supplemental declarations provided in opposition to the instant motion, that Mills was a member of Eden at the time the organization filed the initial complaint on September 10, 2018. *See* FAC; Opp.; Mills Decl.; *see Laidlaw*, 528 U.S. at 180 (noting that courts must assure that a plaintiff has "standing at the outset of the litigation"); *see also Coalition for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F.Supp.2d 1195, 1200 (N.D. Cal. 2011) (citing *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000)). Due to this failure, the Court finds that Eden has

7

failed to establish Article III standing at the time the initial complaint was filed. Nevertheless, the Court declines to dismiss Eden's complaint.

As noted above, Eden has alleged, by way of its FAC and supplemental declarations, that one of its current members has suffered, and continues to suffer, a concrete injury traceable to defendants' alleged activity at the Facility and therefore currently has standing in his own right under Article III. If the Court dismissed Eden's complaint for lack of standing, plaintiff could simply refile immediately thereafter. Such a result would elevate form over substance. Because "parties may cure standing deficiencies through supplemental pleadings[,]" the Court declines to dismiss Eden's complaint and instructs plaintiff to file a supplemental pleading under Rule 15(d) alleging Mills' membership in the plaintiff-organization at the time of the supplemental filing. *See Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1043-44 (9th Cir. 2015) (affirming district court's declination to dismiss complaint for lack of standing and treatment of amended complaint as supplemental pleading under Rule 15(d)); *see also* Wright, Miller, & Kane, Federal Practice and Procedure: Civil 3d § 1505, at 262-63 (noting that Rule 15(d) permits filing of a supplemental pleading to correct a defective complaint and circumvents "the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief").

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** defendants' motion to dismiss and **GRANTS** plaintiff leave to file a supplemental pleading under Rule 15(d). Plaintiff shall so file no later than **Friday, March 29, 2019**. Defendants shall file their response thereto no later than **Friday, April 15, 2019**. Failure to timely file a supplemental pleading will result in *sua sponte* dismissal of plaintiff's action. The Court **CONTINUES** the initial case management conference currently scheduled for April 15, 2019 to May 13, 2019.

This Order terminates Docket Number 39.

**IT IS SO ORDERED.**

Dated: March 14, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

8